JUDGE KAPLAN

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FILE COPY

5883

|  |  |
|---|---|
| THE LAW OFFICE OF THEODORE N. COX | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| HILLARY CLINTON, Secretary of State, | ) |
| United States Department of State, | ) |
| BARACK OBAMA, | ) |
| The President of the United States | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

Docket #:

RECEIVED
AUG 22 2011
U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## AND REQUEST FOR ATTORNEY FEES

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 et seq.,

and the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, *et seq.*, for a declaratory

judgment, injunctive and other appropriate relief to obtain the timely and thorough response to

Plaintiff's FOIA request which was filed on December 2, 2008 and FOIA appeal that has been

pending since March 18, 2011. Plaintiff files this action seeking to obtain an adequate search of

the documents requested and to obtain the disclosure of agency records improperly withheld by

defendants, President Barack Obama and Secretary of State Hillary Clinton.

1

## JURISDICTION AND VENUE

2.     The Southern District Court of New York has both subject matter jurisdiction over this

action and personal jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and

552(a)(6)(C)(i). This Court also has original jurisdiction pursuant to 28 §§ 1331 and 1346.


3.     Venue lies in the Southern District of New York pursuant to 5 U.S.C. § 552(a)(4)(B), 28

§§1391(e) and 1402(a) as the Plaintiff, The Law Office of Theodore N. Cox resides and has its

principal place of business in this district located at 401 Broadway, Suite 701, New York, NY

10013.

## PARTIES

4.     Plaintiff, the Law Office of Theodore N. Cox is a New York County Law office

specializing in immigration law and representing clients at immigration courts across the country.

The Law Office of Theodore N. Cox has been representing clients seeking asylum in the United

States and other relief from removal proceedings for the past twenty years.


5.     Defendant, Hillary Rodham Clinton is the Secretary of State and is the President's chief

foreign affairs adviser. The Secretary of State is responsible for the administration of the

Department of State, including responding to requests under the Freedom of Information Act for

Department of State records.


6.     Defendant, President Barack Obama is the President of the United States and is

responsible to "take care that the laws be faithfully executed" U.S. Constitution Art. 2, § 3.

## **STATUTORY FRAMEWORK**

7.     The Freedom of Information Act was enacted to encourage government transparency and public scrutiny of government action. The Freedom of Information Act allows members of the public at large to understand federal agency operations and to hold the government accountable. The Freedom of Information Act is the fulcrum of a vibrant and functioning democracy.

8.     Any member of the public may make a request for records to an agency of the United States under the Freedom of Information Act.

9.     The Freedom of Information Act implementing statute requires that an Agency receiving a FOIA request must respond in writing to the requestor within 20 business days after receipt of the request. 5 U.S.C. § 552(a)(6)(A)(I). The agency must respond with its intent to comply (or not comply) with the request, reasons for this determination, and whether the requestor has a right to appeal the determination. *Id.*

10.     The Freedom of Information Act also requires an agency to make a reasonable search for responsive records. 5 U.S.C. § 552(a)(3)(c); *Zemansky v. Environmental Protection Agency,* 767 F.2d 569, 571(9th Cir. 1985).

11.     The Freedom of Information Act mandates that federal agencies disclose all records in response to a request for records by a member of the public unless the records fall within a certain narrow set of statutory exceptions. 5 U.S.C. § 552(a)(4)(B).

12.     There are very few exceptions which allow a federal agency to withhold information

from a Freedom of Information Act requester. These exceptions are narrowly construed, and the

burden is on the agency to show why non-compliance with a Freedom of Information Act

request clearly falls under one of these exceptions. 5 U.S.C. § 552(a)(4)(B). "An Agency seeking

to withhold information under an exemption to FOIA has the burden of proving that the

information falls under the claimed exemption" *GC Micro Corp. V. Defense Logistics Agency,*

33 F.3d 1109, 1113 (9th Cir. 1994); *see also Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987).


13.     A Freedom of Information Act requestor who has been denied records may appeal the

denial to the agency and the agency is required to make a "determination" on the merits of a

Freedom of Information Act Appeal within 20 working days of receipt. 5 U.S.C. §

552(a)(6)(A)(ii)(" Each agency, upon any request for records….shall determine within ten days

twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any

such request whether to comply with such request and shall immediately notify the person

making such request of such determination and the reasons therefore, and of the right of such

person to appeal to the head of the agency any adverse determination"). *Id.*  The agency must

"immediately notify the person making such a request of the provisions for judicial review of

that determination". *Id.* An agency may extend this response deadline up to 10 working days in

"unusual circumstances" but only can do so upon giving notice to requestor. *Id.*


14.     The Freedom of Information Act also requires that any denial of a request list the "names

and titles or positions of each person responsible for the denial." 5 US.C. §552(a)(6)(c).


4

15.     The Department of State implements the Freedom of Information Act under Title 22 of the Code of Federal Regulations (CFR), part 171.

16.     A Freedom of Information Act Requestor is deemed to have exhausted all administrative remedies if the agency fails to comply with the statutory limits. 5 U.S.C. § 552(a)(6)(c)(i).

17.     District Courts have jurisdiction to enjoin the agency from withholding agency records and to order the production of records that are subject to disclosure. 5 U.S.C. § 552(a)(4)(B). Courts must undertake their analysis of delayed Freedom of Information Act requests by "recognizing the enduring beliefs underlying freedom of information laws: that an informed public is desirable that access to information prevents governmental abuse and helps secure freedom, and that, ultimately, government must answer to its citizens." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 792 (3rd Cir. 2004).

18.     A plaintiff may file a request for an order enjoining the agency from relying on an individual regulation or practice in all future FOIA undertakings. *Cf. McGehee v. CIA,* 697 F.2d 1095 (D.C. Cir. 1983).

19.     A plaintiff can request a declaratory judgment stating that the agency's actions are in violation of the Freedom of Information Act. 28 U.S.C. § 2201; 28 U.S.C. § 1361.

20.     A plaintiff can recover reasonable attorney fees where the plaintiff has "substantially

prevailed" on the merits of their Freedom of Information Act claim. 5 U.S.C. § 552(a)(4)(E).

Plaintiffs can substantially prevail by adjudicating their claim for relief through a judicial order,

an enforceable written agreement, consent decree or voluntary/unilateral change in position by

the agency if the complainant's claim is not insubstantial. 5 U.S.C. § 552(a)(4)(E); *See* OPEN

Government Act, § 4; *see, e.g., Hersh & Hersh v. HHS*, No. 06-4234, 2008 WL 2725497, at *2 (N.D.

Cal. July 10, 2008).


21.     If the agency's action are so flagrant, arbitrary and capricious, then the Court reviewing

the action make a specific finding of that fact and refer the matter to the Merit System Protection

Board for further investigation. 5 U.S.C. § 552(a)(4)(F). This will happen if the Court orders the

production of agency records improperly withheld from Plaintiffs and finds that the "circumstances

surrounding the withholding raises questions whether agency personnel acted arbitrarily or

capriciously with respect to the withholding". *Id.* The Special Counsel appointed" shall promptly

initiate a proceeding to determine whether disciplinary action is warranted against the officer or

employee who was primarily responsible for the withholding". *Id.*


22.     The burden is on the Defendant agency to sustain its action and the Defendant must serve

an answer or otherwise plead to any complaint filed as a district court action within 30 days after

service of the pleading unless the court otherwise directs for good cause shown.  5 U.S.C. § 552

(a)(4)(c).

## BACKGROUND

23.     Since 2008, federal appellate courts, the Board of Immigration Appeals and Executive

Office immigration courts have denied asylum relief and reversed grants of asylum to Chinese

asylum seekers in reliance on a report drafted and published by the Department of State, Bureau

of Democracy Human Rights and Labor, titled *China: Profile of Asylum Claims and Country*

*Conditions* (hereinafter "State Department Profile"). The most recent report from 2007 remains

the most controversial and is cited in every single Chinese family planning-related case to date.

*See* Department of State, Bureau of Democracy Human Rights and Labor, *China Country Report*

*on Human Rights Practices—2007* (March 11, 2008), *available at*

http://www.state.gov/g/drl/rls/hrrpt/2007/100518.htm.


24.     The subject of this litigation is the underlying Freedom of Information Act Request for

the documents used and relied upon in producing the State Department Profiles for China which

is crucial to evaluating the reliability and accurateness of the report itself.



### FACTUAL ALLEGATIONS

#### A.  Plaintiff's December 2, 2008 Request for Information  (Attached Exhibit A)

25.     Plaintiff made a request to the Department of State on December 2, 2008 pursuant to the

Freedom of Information Act ("FOIA"), codified at 5 U.S.C. §552. Plaintiff's Freedom of

Information Act submission was given control number 200807436. Plaintiff's Freedom of

Information Act submission requested all records (as defined in 22 C.F.R. §171.11(e)) relied

upon by the Department of State to support each and every statement of fact, speculation,

allegation, observation, and/or conclusion made in the following reports: the U.S. Dep't of State,

Bureau of Democracy, Human Rights and Labor reports *"China: Profile of Asylum Claims and*

*Country Conditions"* from 1998, 2004, 2005, 2006 and most importantly, 2007. The scope of the

FOIA request focused on the sections of the Department of State profiles which relate to China's

population control policy (also referred to as family planning policy) and specifically requested

the following:

- A record containing the identity and country-specific credentials of all of the authors contributing to the *Profiles* and *Country Reports*;

- Any written or otherwise recorded attestation or affirmation by such contributing authors concerning the veracity, accuracy, objectivity, neutrality and/or the source of their statements of facts and/or opinions;

- All correspondence, notes, or reports regarding communication between United States government personnel and Chinese authorities cited in the China Profile (e.g., p. 30 of the *2007 Profile*: "National Population and Family Planning Commission officials told U.S. Embassy officials in July 2005 that, in accordance with an unpublished 2002 national-level "Regulation on Issues Concerning Births by Students when Overseas. . ." and "As to Fujian Province, in response to an inquiry by the U.S. Consulate General in Guangzhou. . .");

- All reports and field investigations cited by, or used in compiling the China Profile (see, e.g., p. 24 of the *2007 Profile*: "U.S. diplomats in China have heard reports that local officials occasionally employ illegal means. . .");

- Copies of all laws and regulations cited by the China Profile, in the original Chinese language, including the laws and regulations as appeared in Appendix A and Appendix B of the *2007 Profile*, as well as any documentation regarding the identity and qualifications of the translator(s) used by the Department of State;

- All correspondence, reports, and documentation associated with Appendix C of the *2007 Profile*, including the original (un-translated) letter from the Fujian Province Population and Family Planning Commission, and the initial inquiry from the U.S. government;

- A record of the names and credentials of the American diplomats who stated that they were unaware of "any cases in which returnees from the United States were forced to undergo sterilization procedures on their return" as reported in the *2005 Profile*;

- Records or documentation of any and all investigation team sent to China since 2000 for purposes of investigating China's family planning policy, e.g. an investigation team was sent to China in May 2002 under the direction of the former Secretary of State Colin Powell.

**B. <u>Department of State's September 27, 2010 Response</u> (Attached Exhibit B)**

26.    The State Department's initial response was received September 27, 2010 which stated that eleven documents were responsive to Plaintiffs request for the documents used by the State Department Bureau of Democracy, Human Rights and Labor for drafting the Country Report profiles. Out of the eleven documents matching the search, one was released in full, four were released with excisions and one was withheld in full. The response stated that the remaining five documents required interagency coordination and that the one document withheld in full was withheld under exemption B5 (*Interagency or intra-agency communications forming part of the deliberative process, attorney-client privilege or attorney work-product*).

**C. <u>Department of State's December 17, 2010 Response</u> (Attached Exhibit C)**

27.    The State Department's second response was received December 17, 2010 and resulted in the retrieval of fifteen additional documents which they released eleven in full and four with excisions which was further deemed as "responsive to our request".

**D. <u>Plaintiff's February 28, 2011 Amended Request</u> (Attached Exhibit D)**

28.    On February 28, 2011, Plaintiff filed amended their initial Freedom of Information Act request in connection to the two Department of State's responses, seeking more documents from the unclassified material. The unclassified material request related to information concerning the investigation, findings, and correspondence regarding the three-member independent team sent

by the Secretary of State to China in May 2002 to investigate the allegations that United Nation's

Population Fund ("UNFPA") China program participated in the coercive enforcement of birth

limitation rules, including all records relied upon by the team to support the team's speculations,

allegations, observations, and conclusions, that China's birth planning program had "coercive

elements in law and practice."

29.     In addition, the requested documents include all documents, records, and correspondence,

regarding talks between UNFPA, United States government personnel, and the Chinese

government personnel regarding revising China's birth limitation program to be in a manner

consistent with Kemp-Kasten constraints, and any speculations, allegations, observations, and

conclusions regarding whether or not UNFPA activities and China's birth limitation program is

in fact consistent with Kemp-Kasten constraints.  Specifically, the requested records include, but

are not limited to, the following:

- Records containing the identity and credentials of the three member team sent to China in May 2002 to investigate the China's birth limitation program following allegations that coercive enforcement was used in its implementation;

- Any written or otherwise recorded attestation or affirmation by such contributing team members concerning the veracity, accuracy, objectivity, neutrality, and/or the source of their findings of facts and/or opinions;

- All reports and field investigations written, cited by, or used following the investigation and used in the team-members statements of facts or findings following the investigation, including, but not limited to, their conclusion that China's birth planning program had "coercive elements in law and practice,";

- All correspondence, notes, or reports regarding communication between United States government personnel and Chinese authorities regarding the United State's effort to get both parties to modify the program in a manner consistent with the Kemp-Kasten constraints;

- All other documents, reports, or records regarding China's birth limitation program and its implementation with regard to Kemp-Kasten restraints.

### E. Plaintiffs March 18, 2011 Appeal (Attached Exhibit E)

30.    On March 18, 2011, (within the 60-day appeal timeframe), Plaintiff appealed the two responses received from September and December of 2010 to the Chairman of Appeals Review Panel at the Department of State, case control no. 200807436. The basis of the appeal was that the documents produced did not provide information regarding specific findings in the China Country Profiles, and that Plaintiffs believe that additional records responsive to their initial request made were not located or not sent to them. In order to assist in the rapid recovery of these records, the amended appeal specifically cited to the findings in specific China Country Profiles for which the initial Freedom of Information Act response did not provide a factual basis for. The request requested the documentation and records that serve as a basis for these findings:

2005 China Country Profile:

- American diplomats in China are unaware of "any cases in which returnees from the United States were forced to undergo sterilization procedures on their return."

2006 China Country Profile:

- "[s]enior officials stated repeatedly that the Government 'made it a principle to ban coercion at any level' and the SFPC [State Family Planning Commission] has issued circulars nationwide prohibiting birth planning officials from coercing women to undergo abortions or sterilization against their will."

- Physical coercion is specifically condemned.

2007 China Country Profile:

- "In 2003, officials in one province who tried to force a woman to be sterilized were reprimanded after she complained to national family planning officials and insisted on

her right under the law to choose her method of birth control.  She subsequent chose an IUD."

- "The U.S. Embassy and Consulates General are unaware of any so-called "abortion certificates,".

- "According to the Fujian Provincial Birth Planning Committee (FPBPC), there have been no cases of forced abortion or sterilization in Fujian Province in the last 10 years...

-   The FPBPC acknowledges that during the 1980s and early 1990s there were isolated cases of forced abortion and sterilization.  Since that time, the FPBPC asserts that it has insisted that all men and women who undergo surgical procedures provide informed, written consent before surgery.

- Local physicians in contact with the U.S. Consulate General in Guangzhou report that they have not seen signs of forced abortions or sterilizations among their patients from Fujian and Guangdong Provinces since the 1980s."

- "... a hospital director in Changle, Fujian, stated that the hospital would take "measures" (unspecified) to induce some patients to undergo abortions in the name of compliance with the birth planning law.  Consulate General officials visiting Fujian have found that coercion through public and other pressure has been used, but they did not find any cases of physical force employed in connection with abortion or sterilization.  In interviews with visa applicants from Fujian, representing a wide cross-section of society.  Consular General officers have found that many violators of the one-child policy paid fines but found no evidence of forced abortion or property confiscation."

- Enforcement efforts in Fujian Province of family planning policies is "uneven."

## F. No Reply from the Department of State

31.    Plaintiff's appeal of their Freedom of Information Act request to the State Department remains without reply within the mandatory 20 days and without any further information from the Chairman of Appeals Review Board.

12

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

32.    Plaintiff is deemed to have exhausted all administrative remedies because the State

Department clearly failed to comply with the statutory limits for its responses to Plaintiffs

Freedom of Information Act requests and appeal. 5 U.S.C. § 552(a)(6)(c)(i).

## DEFENDANTS VIOLATION OF THE FREEDOM OF INFORMATION ACT

### FIRST CAUSE OF ACTION
### DEFENDANTS VIOLATED THE FREEDOM OF INFORMATION ACT BY FAILING TO CONDUCT AN ADEQUATE SEARCH OF RECORDS IN RESPONSE TO PLAINTIFF'S REQUEST

33.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-32

above inclusive.

34.    Plaintiff's Freedom of Information Act request provided explicitly detailed information

regarding a few distinct reports authored by the Defendant, the Department of State. Plaintiff has

a legal right under the Freedom of Information Act to enforce the Defendants' obligation to

make reasonable efforts to search for documents that are responsive to Plaintiff's requests and

there exists not basis for Defendants' failure to make such reasonable efforts.

35.    By failing to conduct an adequate search of all the records pertaining to the specific

request that Plaintiff detailed and set out in their initial Freedom of Information Act request,

subsequent Freedom of Information Act requests and appeal, the State Department has violated

Plaintiff's right to the Defendants' records under 5 U.S.C. § 552(a)(3)(C) and corresponding agency regulations.

36.     Plaintiff has exhausted all applicable administrative remedies with respect to Defendants' wrongful failure to adequately search for Plaintiff's requested records. 5 U.S.C. § 552(a)(6)(C)(i).

SECOND CAUSE OF ACTION
DEFENDANTS VIOLATED THE FREEDOM OF INFORMATION ACT BY FAILING TO RESPOND TO PLAINTIFF'S REQUEST IN A TIMELY MANNER

37.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-326 above inclusive.

38.     Plaintiff submitted the initial Freedom of Information Act request on December of 2008. The State Department's first response was on September 27, 2010 and their second response was on December 17, 2010. Plaintiff submitted an amended request on February 28, 2011 narrowly defining which specific statements from the report it sought to obtain the support documents for. Plaintiff further appealed the State Department's response to their Freedom of Information Act request on March 18, 2011.

39.     Defendant, the Department of State has not responded to Plaintiff's Freedom of Information Act request as of August 2011 for over five months. Meanwhile, thousands of Chinese asylum seekers fleeing forcible family planning practices are deported back to China under the U.S. Government's conviction that their claims are moot.

14

40.     Furthermore, under 5 U.S.C.§ 552(a)(6)(E), certain Freedom of Information Act requests can be marked for expedited processing if the failure to obtain information in a timely manner would pose a significant harm. One of the categories of requesters entitled to this special processing includes requests made by a person primarily engaged in the dissemination of information to the public, and involving compelling urgency to inform the public.

41.     Plaintiff's Freedom of Information Act request warranted expedited processing because the requested information directly impacts the lives of thousands of asylum-seekers in the United States and could significantly reduce the harm to them.  2 C.F.R §171.12(b).  The evidence requested in the Freedom of Information Act goes directly to precedent decision and directly impacts asylum claims of this nature.  Therefore, the present Freedom of Information Act request should have been processed expeditiously.

42.     Plaintiff has exhausted all applicable administrative remedies with respect to Defendants' untimely compliance with Plaintiffs FOIA request and appeal. 5 U.S.C. § 552(a)(6)(C)(i).

## THIRD CAUSE OF ACTION
## DEFENDANTS VIOLATED THE FREEDOM OF INFORMATION ACT BY WRONGFULLY WITHHOLDING AGENCY RECORDS AND BY FAILING TO DISCLOSE AND RELEASE RECORDS RESPONSIVE TO PLAINTIFF'S REQUEST

43.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-32 above inclusive.

44.    The State Department's failure to make its records available to the public violates 5

U.S.C. § 552(a)(1)-(2). Plaintiff has a legal right under the Freedom of Information Act to obtain

the agency records they requested from the State Department and its sub agency, the Bureau of

Democracy, Human Rights and Labor and there exists no basis for the State Department's failure

to make available such records. Furthermore, there exists no basis for the State Department's

failure to make available all of the records responsive to the Plaintiff's detailed requests and

there exists no basis for the redactions and withholding of documents from that production.


45.    Defendants' withholding of agency records sought by Plaintff's request violates the

Freedom of Information Act, 5 U.S.C. §§ 552(a)(3)(A) and (a)(6)(A) and applicable regulations

promulgated there under.


46.    Plaintiff has exhausted all applicable administrative remedies with respect to Defendants'

wrongful withholding of the requested records. 5 U.S.C. § 552(a)(6)(C)(i).


47.    Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the

requested documents. 5 U.S.C. § 5(a)(4)(B).


## FOURTH CAUSE OF ACTION

### DEFENDANT VIOLATED THE FREEDOM OF INFORMATION ACT BY FAILING TO MAKE A DETERMINATION ON THE MERITS OF PLAINTIFF'S FOIA APPEAL

48.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-32

above inclusive

49.     Defendants failed to respond to Plaintiff's Freedom of Information Act appeal filed on March 18, 2011.

50.     Defendants failed to make a determination on the merits of the Freedom of Information Act Appeal within 20 days from the receipt of the March 18, 2011 appeal in accordance with 5 U.S.C. 5 U.S.C. § 552(a)(6)(A)(ii).

51.     Defendants failed to demonstrate unusual circumstances or to provide notice to Plaintiffs about their response to Plaintiff's appeal in accordance with 5 U.S.C. § 552(a)(6)(C).

52.     Defendants failed to provide the Plaintiff with a list of the names and titles or positions of each person responsible for the denial of the appeal in accordance with 5 U.S.C. § 552(a)(6)(c).

17

**WHEREFORE, Plaintiffs request that this Court award them the following relief:**

1.  Declaratory Judgment that Defendants' actions are in violation of the Freedom of Information Act;

2.  Order Defendants to conduct a reasonable search for all responsive records;

3.  Order Defendants to promptly disclose the requested records in their entirety, and make copies available to Plaintiff;

4.  Provide for expeditious proceedings in this action pursuant to 28 U.S.C. § 1657;

5.  Enjoin the Defendants from relying on invalid practices for all future Freedom of Information Act requests;

6.  Award Plaintiffs their reasonable litigation costs and attorney's fees;

7.  Refer the matter of Defendants' non-compliance with FOIA requests to the Merit System Protection Board to appoint Special Counsel to investigate pursuant to 5 U.S.C. § 552(a)(4)(F).

8.  Grant such other relief as the Court may deem just and proper.

DATED: August 22, 2011

Respectfully Submitted,

Theodore N. Cox

The Law Office of Theodore N. Cox

401 Broadway, Suit 701

New York, NY 10013

18

## EXHIBIT LIST

A) Plaintiff's Freedom of Information Act Request Submitted December 2, 2008......20

B) Department of State Response to Plaintiff's Freedom of Information Act Request, Dated September 27, 2010..........................................................................25

C) Department of State Second Response to Plaintiff's Freedom of Information Act Request Dated December 17, 2010.............................................................27

D) Plaintiff's Amended Freedom of Information Act Request Submitted February 28, 2011.....................................................................................................29

E) Plaintiff's Freedom of Information Act Appeal Submitted March 18, 2011...........49

# *LAW OFFICE OF THEODORE N. COX, ESQ.*

*Attorneys-at-law*
*401 Broadway, Suite 701*
*New York, New York 10013*

Telephone: (212) 925-1208
Facsimile:  (212) 925-5188
E-mail:  tedcoxecf@gmail.com

December 1, 2008

Office of Information Program and Services
A/ISS/IPS
Department of State, SA-2
Washington, DC 20522-8001

Re: **Freedom of Information Act Request**
**Expedited Processing and Fee Waiver/Reduction Requested**

Dear Officer:

This request is made pursuant to the Freedom of Information Act ("FOIA"),

codified at 5 U.S.C. §552.  The FOIA statute "calls for broad disclosure of Government

records." *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988) (internal quotation marks

omitted).  The Department of State implements the FOIA statute in Title 22 Code of

Federal Regulations (CFR), part 171.

**Identification of Documents**

The requested documents include all records (as defined in 22 C.F.R. §171.11(e))

relied upon by the Department of State to support each and every statement of fact,

speculation, allegation, observation, and/or conclusion made in the following reports:

1)     Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State,

*China:  Profile of Asylum Claims and Country Conditions* (Apr. 1998)

(hereinafter "*1998 Profile*").

20

2)   Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, *China: Profile of Asylum Claims and Country Conditions* (Jun. 2004) (hereinafter "*2004 Profile*").

3)   Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, *China: Profile of Asylum Claims and Country Conditions* (Oct. 2005) (hereinafter "*2005 Profile*").

4)   Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, *China: Profile of Asylum Claims and Country Conditions* (May 2007) (hereinafter "*2007 Profile*").

5)   Bureau of Democracy, Human Rights, and Labor, U.S. Dep't of State, *China Country Reports on Human Rights Practices – 2006* (Mar. 2007) (hereinafter "*2006 Country Reports*").

Please note that the present request concerns the records that the Department of State used in preparing the above *Profiles* and *Country Reports*; it is NOT a request of the *Profiles* and *Country Reports* themselves.

**Scope of Request**

The present request focuses on the sections of the *Profiles* and *Country Reports* relating to China's population control policy (also referred to as family planning policy). Specifically, the requested records include, but are not limited to, the following:

- A record containing the identity and country-specific credentials of all of the authors contributing to the *Profiles* and *Country Reports*;

- Any written or otherwise recorded attestation or affirmation by such contributing authors concerning the veracity, accuracy, objectivity, neutrality and/or the source of their statements of facts and/or opinions;

21

- All correspondence, notes, or reports regarding communication between United States government personnel and Chinese authorities cited in the China Profile (e.g., p. 30 of the *2007 Profile*: "National Population and Family Planning Commission officials told U.S. Embassy officials in July 2005 that, in accordance with an unpublished 2002 national-level "Regulation on Issues Concerning Births by Students when Overseas. . ." and "As to Fujian Province, in response to an inquiry by the U.S. Consulate General in Guangzhou. . .");

- All reports and field investigations cited by, or used in compiling the China Profile (see, e.g., p. 24 of the *2007 Profile*: "U.S. diplomats in China have heard reports that local officials occasionally employ illegal means. . .");

- Copies of all laws and regulations cited by the China Profile, in the original Chinese language, including the laws and regulations as appeared in Appendix A and Appendix B of the *2007 Profile*, as well as any documentation regarding the identity and qualifications of the translator(s) used by the Department of State;

- All correspondence, reports, and documentation associated with Appendix C of the *2007 Profile*, including the original (untranslated) letter from the Fujian Province Population and Family Planning Commission, and the initial inquiry from the U.S. government;

- A record of the names and credentials of the American diplomats who stated that they were unaware of "any cases in which returnees from the United States were forced to undergo sterilization procedures on their return" as reported in the *2005 Profile*;

- Records or documentation of any and all investigation team sent to China since 2000 for purposes of investigating China's family planning policy, e.g. an investigation team was sent to China in May 2002 under the direction of the former Secretary of State Colin Powell.

## Expedited Processing Request

Expedited processing is warranted because the requested information is needed

urgently. 22 C.F.R. §171.12(b). Requested information directly pertains to published

decisions issued by the Board of Immigration Appeals ("BIA"), including but not limited

to *Matter of J-W-S-*, 24 I&N Dec. 185 (BIA 2007), in which the BIA denied asylum

claims filed by Chinese asylum applicants who have a genuine fear of persecution by the

Chinese government. Because of this line of administrative decisions, a large class of

23

asylum seekers is facing imminent danger of being removed to a country in which they fear persecution. Therefore, the present FOIA request should be processed expeditiously. In any event, the FOIA request should be processed within 20 days. 8 C.F.R. §171.12(d).

## Fee Waiver/Reduction Request

It is further requested that any fees be waived or reduced "because [the requested documents are] likely to contribute significantly to public understanding of the operations or activities of the Government and is not primarily in the commercial interest of the requester." 22 C.F.R. §171.17(a). As stated above, the requested documents will shed light on the accuracy of the statements made in the Department of State's country reports and asylum profiles, which directly affects a large class of asylum seekers facing imminent removal. In the event that said fee waiver/reduction request is not granted, requester is willing to pay any applicable fees. 22 C.F.R. §171.14.

## Format Requested

Whenever feasible, it is requested that the documents be provided in CD-ROM format. 22 C.F.R. §171.12(f) ("The Department shall provide requested records in any form or format sought by the requester if the record is readily reproducible in that form or format through reasonable efforts.").

Sincerely yours,

Theodore N. Cox

24



United States Department of State

*Washington, D.C. 20520*

SEP 2 7 ...

Case No.: 200807436
Segment:  DRL001

Mr. Theodore Cox, Esq.
401 Broadway, Suite 701
New York, New York 10013

Dear Mr. Cox:

In response to your request dated December 2, 2008,  under the Freedom of
Information Act (Title 5 USC Section 552), we  initiated  searches of the
following Department of State record systems:   the Central Foreign Policy
Records and the Bureau of  Democracy, Human Rights  and Labor.

The search of the Bureau of  Democracy, Human Rights and Labor  has been
completed, and has resulted in the retrieval of  eleven documents responsive to
your request.  After reviewing these documents, we have determined that one
may be released in full, four may be released with excisions, and one must be
withheld in full.  All released material is enclosed.

A decision on the remaining five documents requires interagency coordination:
all five originated in another government office, which will review the
documents and respond to you directly.

An enclosure provides information on Freedom of Information Act exemptions
and other grounds for withholding material.  Where we have made excisions,
the applicable exemptions are marked on each document.  The one document
withheld in full was withheld under exemption B5.

In some cases, two or more exemptions may apply to the same document.  In
the case of a document released in part, all non-exempt material that is
reasonably segregable from the exempt material has been released.

112

25

- 2 -

With respect to material withheld by the Department of State, you have the right to appeal our determination within 60 days. A copy of the appeals procedures is enclosed.

Still in progress is the search of the Central Foreign Policy Records. Additional information will be provided as it becomes available.

If you have any questions, you may write to the Office of Information Programs and Services, SA-2, Department of State, Washington, DC 20522-8100, or telephone us at (202) 261-8484. Please be sure to refer to the case number shown above in all correspondence about this case.

Sincerely,

Margaret P. Grafeld, Director
Office of Information Programs and Services

Enclosures:
   As stated

113

26



United States Department of State

*Washington, D.C. 20520*

## DEC 17 2010

Case No.: 200807436
Segments ER1 & ER2

Theodore Cox, Esq.
Suite 701
401 Broadway
New York City, New York 10013

Dear Mr. Cox:

I refer to our letter dated September 27, 2010, regarding the release of certain Department of State material under the Freedom of Information Act (Title 5 USC Section 552).

The search of the Central Foreign Policy records of the Department of State has been completed and has resulted in the retrieval of 15 additional documents responsive to your request. After reviewing these documents, we have determined that 11 may be released in full, and four may be released with excisions.

An enclosure provides information on Freedom of Information Act exemptions and other grounds for withholding material. Where we have made excisions, the applicable exemptions are marked on each document.

In some cases, two or more exemptions may apply to the same document. In the case of a document released in part, all non-exempt material that is reasonably segregable from the exempt material has been released.

With respect to material withheld by the Department of State, you have the right to appeal our determination within 60 days. A copy of the appeals procedures is enclosed.

1

27

- 2 -

The Freedom of Information Act provides for the recovery of the direct costs of searching for and duplicating records requested for non-commercial use. However, no fee is charged if the cost of collecting and processing the fee exceeds the amount of the fee. Since billable costs in this case do not exceed that amount, your request has been processed without charge to you.

We have now completed the processing of your case. If you have any questions, you may write to the Office of Information Programs and Services, SA-2, Department of State, Washington, DC 20522-8100, or telephone us at (202) 261-8484. Please be sure to refer to the case number shown above in all correspondence about this case.

We hope that the Department has been of service to you in this matter.

Sincerely,

Alex Galovich
Co-Director, Acting
Office of Information Programs and Services

Enclosures:
    As stated.

2

28

## LAW OFFICE OF THEODORE N. COX, ESQ.

Attorneys-at-law
401 Broadway, Suite 701
New York, NY 10013
Tel.: (212) 925-1208
Fax: (212) 624-0232
tedcoxecf@gmail.com

February 28, 2011

Office of Information Program and Services
A/ISS/IPS
Department of State, SA-2
Washington, DC 20522-8001

RE:    **Freedom of Information Act Request**
       **Expedited Processing and Fee Waiver/Reduction Requested**
       **Case Control No. 200807436**

       **Our File No. 10-190-1**

Dear Officer:

This request is made pursuant to the Freedom of Information Act ("FOIA"), codified at 5 U.S.C. §552, and is connected with a previous FOIA request, case control number 200807436. The FOIA statute "calls for broad disclosure of Government records." *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988) (internal quotation marks omitted). The Department of State implements the FOIA statute under Title 22 Code of Federal Regulations ("C.F.R."), part 171.

**Identification of Documents**

The requested documents include all records (as defined in 22 C.F.R. §171.11(e)) of the investigation, findings, and correspondence regarding the three-member independent team sent by the Secretary of State to China in May 2002 to investigate the allegations that United Nation's Population Fund ("UNFPA") China program participated in the coercive enforcement of birth limitation rules, including all records relied upon by

29

the team to support the team's speculations, allegations, observations, and conclusions, that China's birth planning program had "coercive elements in law and practice."

In addition, the requested documents include all documents, records, and correspondence, regarding talks between UNFPA, United States government personnel, and the Chinese government personnel regarding revising China's birth limitation program to be in a manner consistent with Kemp-Kasten constraints[1], and any speculations, allegations, observations, and conclusions regarding whether or not UNFPA activities and China's birth limitation program is in fact consistent with Kemp-Kasten constraints.

The existence of the three member team's investigation and the talks between the UNFPA, United States government personnel, and the Chinese government on the modification of the birth limitation program was found in unclassified material provided to requester in a previous FOIA, and is attached hereto.

## Scope of Request

The present request focuses on statements, findings, reports, and documentation regarding the birth limitation program in China. Specifically, the requested records include, but are not limited to, the following:

- Records containing the identity and credentials of the three member team sent to China in May 2002 to investigate the China's birth limitation program following allegations that coercive enforcement was used in its implementation;

---

[1] The Kemp-Kasten Amendment has been enacted annually in Foreign Operations appropriation bills since 1985 through 2008, in reaction to allegations that the United Nations Population Fund supported China's population control program. The Amendment prohibits U.S. funding from going to any organization, such as the United Nations Population Fund, that supports or participates in the management of a program of coercive abortion or involuntary sterilization.

2

30

- Any written or otherwise recorded attestation or affirmation by such contributing team members concerning the veracity, accuracy, objectivity, neutrality, and/or the source of their findings of facts and/or opinions;

- All reports and field investigations written, cited by, or used following the investigation and used in the team-members statements of facts or findings following the investigation, including, but not limited to, their conclusion that China's birth planning program had "coercive elements in law and practice,";

- All correspondence, notes, or reports regarding communication between United States government personnel and Chinese authorities regarding the United State's effort to get both parties to modify the program in a manner consistent with the Kemp-Kasten constraints;

- All other documents, reports, or records regarding China's birth limitation program and its implementation with regard to Kemp-Kasten restraints.

## Expedited Processing Request

Expedited processing is warranted because the requested information is needed urgently.  22 C.F.R. §171.12(b).  Requested information directly pertains to published decisions issued by the Board of Immigration Appeals ("BIA"), including but not limited to *Matter of J-W-S-*, 24 I&N Dec. 185 (BIA 2007), in which the BIA denied an asylum claim filed by a Chinese asylum applicant who have a genuine fear of persecution by the Chinese government, on the ground that there was not evidence of coercive enforcement of the birth limitation program in China.  This evidence goes directly to this claim. Because of this line of administrative decisions, a large class of asylum seekers are facing imminent danger of being removed to a country in which they fear persecution.  A FOIA responses to a previous FOIA request, see attached, noted the existence of evidence that goes directly to these claims.  Therefore, the present FOIA request should be processed expeditiously.  In any event, the FOIA request should be processed within 20 days.  8 C.F.R. §171.12(d).

## Fee Waiver/Reduction Request

It is further requested that any fees be waived or reduced "because [the requested documents are] likely to contribute significantly to public understanding of the operations or activities of the Government and is not primarily in the commercial interest of the requester." 22 C.F.R. §171.17(a). As stated above, the requested documents will shed light on the accuracy of the statements made in the Department of State's country reports and asylum profiles, which directly affects a large class of asylum seekers facing imminent removal. In the event that said fee waiver/reduction request is not granted, requester is willing to pay any applicable fees. 22 C.F.R. §171.14.

## Format Requested

Whenever feasible, it is requested that the documents be provided in CD-ROM format. 22 C.F.R. §171.12(f) ("The Department shall provide requested records in any form or format sought by requester if the record is readily reproducible in that form or format through reasonable efforts.").

## Reference to Our File No.

We request that the cover letter, and any further correspondence, reference our file number, 10-190-1.

Sincerely yours,

Theodore N. Cox

4

32

UNCLASSIFIED                          **C15**

CONFIDENTIAL      PTO2011   RELEASED IN FULL

PAGE 01        STATE   262313   200448Z
ORIGIN IO-00

INFO   LOG-00    NP-00     AF-00     AID-00    CIAE-00   INL-00    USNW-00
       DODE-00   WHA-00    SRPP-00   DS-00     EAP-00    EUR-00    FBIE-00
       VC-00     TEDE-00   INR-00    LAB-01    L-00      VCE-00    M-00
       NSAE-00   OES-00    OIC-02    CAEX-01   IRM-00    SS-00     EPAE-00
       DSCC-00   PRM-00    DRL-02    NFAT-00   SAS-00    /006R

     262313
     SOURCE:   KODAKA.020043
     DRAFTED BY: IO/EDA:SWHITTEMORE:SW -- 12/19/02 202-647-3975
     APPROVED BY: IO:RTMILLER
     IO/EDA:SWINNICK   PRM:KRYAN   L/HHR:NSCHOU
     L/PM:PCLAYMAN    EAP/CM:DATKINSON  AF/E:GCOLVIN
     WHA/CEN:ARODRIGUES   WHA/AND:RMILES   AF/C:PBELLAMY
     WHA/CEN:BMAKENS    EUR/WE:MADLER(INFO)
     EAP/PIMBS:ADICKEY
     USUN/W:RDICARLO
     EUR/UBI:RDUNHAM
     WHA/CEN:DTITUS
                    ------------------1A9F83  200451Z /38
     O R 200442Z DEC 02
     FM SECSTATE WASHDC
     TO USMISSION USUN NEW YORK IMMEDIATE
     AMEMBASSY DJIBOUTI IMMEDIATE
     AMEMBASSY SAN SALVADOR IMMEDIATE
     AMEMBASSY LIMA IMMEDIATE
     AMEMBASSY LIBREVILLE IMMEDIATE
     AMEMBASSY MADRID IMMEDIATE
     AMEMBASSY MANILA IMMEDIATE
     AMEMBASSY TEGUCIGALPA IMMEDIATE
                         CONFIDENTIAL

     PAGE 02        STATE   262313   200448Z
     AMEMBASSY LONDON IMMEDIATE
     INFO IO COLLECTIVE
     AMEMBASSY BEIJING

     C O N F I D E N T I A L STATE 262313

     E.O. 12958: DECL: 12/03/07
     TAGS: AORC, EAID, PHUM, PREL, CH, UNFPA
     SUBJECT: DEMARCHE REQUEST: UNFPA CHINA PROGRAM

     REF: BEIJING 11787

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: CLARKE N ELLIS
DATE/CASE ID: 22 NOV 2010  200807436                    UNCLASSIFIED

CLASSIFIED BY IO DAS R. TERRELL MILLER FOR REASONS **UNCLASSIFIED**
1.5 (B)(D)

1. (U) THIS IS AN ACTION REQUEST. PLEASE SEE PARAS 10-17.

2. (C) SUMMARY: DEPARTMENT REQUESTS THAT USUN NEW YORK AND ADDRESSEE POSTS DEMARCHE, AT AN APPROPRIATE SENIOR LEVEL, PERMANENT REPRESENTATIVES AND FOREIGN MINISTRY OFFICIALS OF UNDP/UNFPA EXECUTIVE BOARD MEMBER COUNTRIES, IDENTIFIED BELOW. OUR GOAL IS TO CONVINCE THEM TO NOTIFY THE UN POPULATION FUND (UNFPA) SECRETARIAT THAT THEY WISH TO DISCUSS UNFPA'S PROPOSED FIFTH COUNTRY PROGRAM (CP) FOR CHINA (2003-2005) AT THE JANUARY 20-29 EXECUTIVE BOARD MEETING. THIS ACTION IS REQUIRED TO FORESTALL AUTOMATIC EXECUTIVE BOARD ACCEPTANCE OF THE CP. THE U.S. GOVERNMENT WITHHELD ITS $34 MILLION FY 2002 CONTRIBUTION TO UNFPA BECAUSE THE SECRETARY OF STATE DETERMINED, AFTER EXTENSIVE
CONFIDENTIAL

PAGE 03      STATE   262313  200448Z
INVESTIGATION BY THE DEPARTMENT OF STATE AND AN

INDEPENDENT INVESTIGATIVE TEAM, THAT UNFPA'S FOURTH CP WAS IN VIOLATION OF THE KEMP-KASTEN AMENDMENT, A PROVISION OF THE FY 2002 FOREIGN OPERATIONS APPROPRIATIONS ACT, WHICH HAS BEEN INCLUDED IN EVERY FOREIGN OPERATIONS ACT SINCE 1985.  THIS PROVISION PROHIBITS FUNDING TO ANY ORGANIZATION OR PROGRAM "WHICH SUPPORTS OR PARTICIPATES IN THE MANAGEMENT OF A PROGRAM OF COERCIVE ABORTION OR INVOLUNTARY STERILIZATION."  THE PROPOSED FIFTH CP APPEARS TO BE VIRTUALLY IDENTICAL TO THE CURRENT PROGRAM AND SHOULD IT BE ADOPTED, THE U.S. WOULD BE LEGALLY UNABLE TO PROVIDE FUNDING TO UNFPA. THE U.S. HAS BEEN WORKING WITH THE CHINESE GOVERNMENT AND UNFPA TO LIFT THE COERCIVE ASPECTS OF CHINA'S FAMILY PLANNING POLICY IN THE COUNTIES WHERE UNFPA WOULD IMPLEMENT THE PROGRAM. NEGOTIATIONS ARE PROCEEDING, BUT WILL NOT LIKELY REACH A SATISFACTORY CONCLUSION BY JANUARY 20. WE WOULD NEED TO AVOID AN AUTOMATIC APPROVAL OF UNFPA'S FIFTH CP FOR CHINA, WHICH WOULD RESULT IN UNFPA OPERATING IN COUNTIES HAVING COERCIVE BIRTH LIMITATION LAWS AND POLICIES. THIS WOULD PREVENT USG FUNDING TO UNFPA PROGRAMS WORLDWIDE DURING THE THREE-YEAR LIFE OF THE CHINA PROGRAM. END SUMMARY.

BACKGROUND

3. (C) IN THE WAKE OF ALLEGATIONS THAT UNFPA'S CHINA

**UNCLASSIFIED**

34

PROGRAM PARTICIPATED IN COERCIVE ENFORCEMENT OF BIRTH
LIMITATION RULES, THE SECRETARY SENT A THREE-MEMBER       UNCLASSIFIED
                                  CONFIDENTIAL

PAGE 04          STATE    262313  200448Z
INDEPENDENT TEAM TO CHINA IN MAY 2002 TO INVESTIGATE THE
CHARGES. THE TEAM FOUND THAT CHINA'S BIRTH PLANNING
PROGRAM HAD "COERCIVE ELEMENTS IN LAW AND PRACTICE." IT
ALSO FOUND THAT UNFPA SUPPORTED THE COERCIVE BIRTH
PLANNING LAWS THROUGH ITS PROGRAM INCLUDING BY ITS
PROVISION OF FUNDS AND EQUIPMENT TO THE CHINESE
GOVERNMENTAL ENTITIES RESPONSIBLE FOR ENFORCING THE BIRTH
LIMITATION PROGRAM. THE SECRETARY DETERMINED, ON JULY 21,
THAT UNFPA'S FOURTH CP THUS CONSTITUTES "SUPPORT OR
PARTICIPATION IN THE MANAGEMENT OF" CHINA'S COERCIVE
PROGRAM. SINCE JULY, THE ADMINISTRATION HAS ENGAGED IN
NUMEROUS TALKS WITH UNFPA AND CHINESE GOVERNMENT OFFICIALS
IN NEW YORK, WASHINGTON, AND BEIJING IN AN EFFORT TO GET
BOTH PARTIES TO MODIFY THE PROGRAM IN A MANNER CONSISTENT
WITH KEMP-KASTEN CONSTRAINTS.

4. (U) IN DISCUSSIONS WITH U.S. OFFICIALS AND IN THE
PRESENCE OF THE UNFPA COUNTRY REPRESENTATIVE, SENIOR
OFFICIALS IN CHINA'S STATE FAMILY PLANNING COMMISSION
(SFPC) CONCEDE THAT ITS BIRTH PLANNING PROGRAM STILL

CONTAINS COERCIVE PRACTICES TO ENFORCE THE "ONE-CHILD
POLICY" WHICH LIMITS THE NUMBER OF CHILDREN COUPLES MAY
HAVE AND REQUIRES COUPLES TO SEEK PERMISSION TO HAVE A
CHILD.  AMONG THE COERCIVE PRACTICES ARE TARGETS AND
QUOTAS THAT DETERMINE TOTAL NUMBER OF BIRTHS IN ANY GIVEN
AREA IN A GIVEN TIME SPAN AND THE IMPOSITION OF SEVERE
"SOCIAL COMPENSATION FEES" FOR HAVING AN "OUT-OF-PLAN"
CHILD.  THESE "FEES" BECAME PART OF A NEW BIRTH PLANNING
LAW EFFECTIVE SEPTEMBER 1, 2002. BOTH MEASURES ARE
COERCIVE IN NATURE AND COULD LEAD TO INVOLUNTARY
                                  CONFIDENTIAL

PAGE 05          STATE    262313  200448Z
ABORTIONS.

5. (U) THESE POLICIES RAISE HUMAN RIGHTS CONCERNS. THEY
ALSO GO COUNTER TO THE PRINCIPLES ESPOUSED IN THE PROGRAM
OF ACTION (POA) OF THE INTERNATIONAL CONFERENCE ON
POPULATION AND DEVELOPMENT (ICPD), HELD IN CAIRO IN 1994.
CHINA JOINED CONSENSUS ON THE POA.

6. (U) UNFPA, CHARGED WITH ASSISTING NATIONS IN
IMPLEMENTING THE RECOMMENDATIONS IN THE POA, NEGOTIATED AN
AGREEMENT WITH THE CHINESE GOVERNMENT THAT WOULD ALLOW ITS

UNCLASSIFIED

35

FOURTH CP TO BE IMPLEMENTED IN 32 COUNTIES WITHOUT TARGETS
AND QUOTAS. THIS WAS A POSITIVE STEP. UNFPA HAS EXPRESSED          UNCLASSIFIED
ITS CONCERN REGARDING THE SOCIAL COMPENSATION FEES. THE
FEES, AS WELL AS OTHER PARTS OF THE PROGRAM, INCLUDING ITS
OPERATIONAL APPROACH, PUT POTENTIAL FUTURE U.S. FUNDING AT
RISK

7. (U) THE ADMINISTRATION IS COMMITTED TO PROMOTING
REPRODUCTIVE HEALTH WORLDWIDE. THE U.S. PROVIDED NEARLY
$450 MILLION IN FY 2002 TO USAID FOR ITS INTERNATIONAL
MATERNAL HEALTH AND FAMILY PLANNING PROGRAMS. IT BELIEVES
THAT THE WORK UNFPA DOES IN SOME 140 DEVELOPING COUNTRIES
COMPLEMENTS AND STRENGTHENS OURS.

8. (C) ON NOVEMBER 2, A STATE DEPARTMENT TEAM TRAVELED TO
BEIJING, AT THE INVITATION OF THE CHINESE GOVERNMENT, TO
ENGAGE IN FURTHER DISCUSSIONS. MEETINGS WITH CHINESE
GOVERNMENT OFFICIALS WERE CORDIAL AND FOSTERED A BETTER
UNDERSTANDING OF EACH SIDE'S LEGAL CONSTRAINTS. THE U.S.
PROPOSED THAT UNFPA OPERATE IN COUNTIES IN WHICH ALL
                    CONFIDENTIAL

PAGE 06        STATE    262313   200448Z
ASPECTS OF COERCION REGARDING THE DECISION BY COUPLES AS
TO THEIR FAMILY SIZE WOULD BE ELIMINATED. THE CHINESE
APPEARED INTERESTED IN CONSIDERING, FOR EXAMPLE,
ELIMINATING THE NEW "SOCIAL COMPENSATION FEES" IN A FEW
COUNTIES WHERE UNFPA'S FIFTH CP WOULD BE IMPLEMENTED. WE
SEEK A PROGRAM IN WHICH UNFPA WOULD OPERATE IN "SAFE
HAVEN" COUNTRIES. A FIRM RESPONSE TO THE PROPOSAL WAS NOT

GIVEN DUE TO THE POLITICALLY SENSITIVE NATURE OF SUCH A
POLICY CHANGE.  AS OF DECEMBER 19, THE CHINESE
INTERLOCUTORS HAD NOT GIVEN A DECISION.

NEXT STEPS

9. (C) NEGOTIATIONS WILL CONTINUE, BUT IT IS UNLIKELY
THAT A SATISFACTORY SOLUTION WILL BE FOUND BEFORE THE
JANUARY 20-29 EXECUTIVE BOARD MEETING. IT IS ESSENTIAL
THAT THE UNFPA CP FOR CHINA NOT BE AUTOMATICALLY. PER THE
RULES OF THE EXECUTIVE BOARD, IF FIVE EXECUTIVE BOARD
MEMBERS NOTIFY THE UNDP/UNFPA EXECUTIVE BOARD "SECRETARIAT
IN WRITING THAT THEY WISH TO BRING THE CHINA PROGRAM
BEFORE THE EXECUTIVE BOARD" (EXECUTIVE BOARD DECISION
DP/2001/11, OP 7(E)), AUTOMATIC ACCEPTANCE WILL BE STAVED
OFF. THIS BOARD ACTION MIGHT PROVIDE AN OPPORTUNITY FOR
EITHER POSTPONING THE CHINA CP IN ITS PRESENT FORM OR
AMENDING IT.

UNCLASSIFIED

36

·10.  (C) DEPARTMENT SEEKS YOUR ASSISTANCE IN RECRUITING A
MINIMUM OF FOUR LIKE-MINDED EXECUTIVE BOARD MEMBERS TO
INTERCEDE WITH THE EXECUTIVE BOARD SECRETARIAT. WE HAVE
                    CONFIDENTIAL

UNCLASSIFIED

PAGE 07         STATE    262313  200448Z
IDENTIFIED FIVE COUNTRIES THAT ENTERED RESERVATIONS WHEN
JOINING CONSENSUS ON THE POA/ICPD.

-- DELEGATIONS OF EL SALVADOR, HONDURAS, AND ECUADOR
ENTERED RESERVATIONS TO SUCH TERMS AS "REPRODUCTIVE
HEALTH," AND "REPRODUCTIVE RIGHTS," EMPHASIZING THAT THEY
SHOULD NEVER INCLUDE ABORTION AS A SERVICE OR AS A METHOD
OF REGULATING FERTILITY.

-- PERU ENTERED A RESERVATION SAYING THAT ABORTION IS A
PUBLIC HEALTH PROBLEM TO BE TACKLED BY EDUCATION AND
FAMILY PLANNING.

-- DJIBOUTI'S RESERVATION FOCUSED ON CONFLICT BETWEEN
PASSAGES IN THE POA AND THE PRINCIPLES OF ISLAM, WHICH
·HOLD THAT ABORTION, EXCEPT TO SAVE THE MOTHER'S LIFE, IS
NOT PERMITTED.

11.  (C) ALTHOUGH THE PHILIPPINES, SPAIN AND GABON DID NOT
MAKE RESERVATIONS TO THE POA, WE BELIEVE THAT THESE
COUNTRIES MIGHT BE WILLING TO HELP REACH A SOLUTION THAT
WOULD HELP ELIMINATE COERCION IN CHINA AND POSSIBLY
RESTORE U.S. FUNDING TO UNFPA.

12.  (C) THE UK HAS OFTEN EXPRESSED SERIOUS CONCERN ABOUT
CHINA'S FAMILY PLANNING PROGRAM AS AN ABUSE OF HUMAN
RIGHTS.  ALTHOUGH AN INVESTIGATIVE TEAM FROM THE UK DID
NOT FIND THAT THE UNFPA PROGRAM WAS INVOLVED IN COERCIVE
PRACTICES, IT FOUND THAT THERE WERE COERCIVE ELEMENTS IN
LAW AND POLICY IN THE CHINESE BIRTH LIMITATION LAWS.   WE
UNDERSTAND THAT IN THE WAKE OF THE U.S. TEAM'S
                    CONFIDENTIAL

PAGE 08        STATE    262313  200448Z
INVESTIGATION, FOLLOWED BY THE PUBLICATION OF THE U.S.
LEGAL ANALYSIS, THE UK MAY HAVE RE-EVALUATED ITS OPINION
OF UNFPA ACTIVITIES IN CHINA. FOR EXAMPLE, ITS DELEGATION
TO THE UNDP/UNFPA EXECUTIVE BOARD MEETING IN SEPTEMBER
2002 STATED THAT THE "SOCIAL COMPENSATION FEES" WERE
UNACCEPTABLE.

13.  (U) DEPARTMENT HAS PROVIDED GENERAL TALKING POINTS AS
WELL AS SPECIFIC ONES TO BE USED AS INDICATED. ALL
GOVERNMENTS INTERLOCUTORS WE APPROACH SHOULD BE ASKED TO

UNCLASSIFIED

37

NOTIFY THE UNDP/UNFPA EXECUTIVE BOARD SECRETARIAT AS SOON UNCLASSIFIED
AS POSSIBLE THAT THEY WISH TO DISCUSS THE CHINA PROGRAM AT
THE JANUARY 20, 2003 EXECUTIVE BOARD MEETING.

-- THE U.S. GOVERNMENT WITHHELD ITS FY 2002 PLEDGE OF $34
MILLION TO THE UN POPULATION FUND (UNFPA), BECAUSE THE
SECRETARY OF STATE DETERMINED ITS PROGRAM IN CHINA
CONSTITUTED SUPPORT OF OR PARTICIPATION IN THE MANAGEMENT
OF A PROGRAM OF COERCIVE ABORTION RESULTING FROM CHINA'S
BIRTH LIMITATION POLICIES AND PRACTICES.

-- OUR LAW STATES THAT WE CANNOT FUND AN ORGANIZATION OR
PROGRAM THAT SUPPORTS OR PARTICIPATES IN THE MANAGEMENT OF
A PROGRAM OF COERCIVE ABORTION OR INVOLUNTARY
STERILIZATION.

-- RESOLVING THIS PROBLEM COULD PERMIT THE U.S. TO RESUME
FUNDING WORTHY UNFPA PROGRAMS IN SOME OF THE NEEDIEST
COUNTRIES AROUND THE GLOBE.

-- CHINA'S FAMILY PLANNING POLICIES ARE NEITHER IN
                    CONFIDENTIAL

PAGE 09      STATE    262313   200448Z
ACCORDANCE WITH HUMAN RIGHTS PRINCIPLES NOR WITH THOSE OF
THE PROGRAM OF ACTION OF THE INTERNATIONAL CONFERENCE ON
POPULATION AND DEVELOPMENT (ICPD), WHICH INCLUDES THAT
COUPLES SHOULD BE ABLE TO DECIDE FREELY AND RESPONSIBLY
THE NUMBER, SPACING AND TIMING OF THEIR CHILDREN (PARA
7.3).

-- MANY GOVERNMENTS HAVE PROTESTED THE COERCIVE ELEMENTS
OF THE CHINESE POLICY, SUCH AS QUOTAS AND TARGETS AND

SEVERE "SOCIAL COMPENSATION FEES" THAT FORCE ESPECIALLY
POOR WOMEN TO UNDERGO ABORTIONS.

-- UNFPA CONTRIBUTED FUNDS AND EQUIPMENT TO THE CHINESE
GOVERNMENTAL ENTITIES RESPONSIBLE FOR ENFORCING THE
COERCIVE PROGRAM.  THIS WAS FOUND TO CONSTITUTE SUPPORT OR
PARTICIPATION IN THE MANAGEMENT OF A PROGRAM OF COERCIVE
ABORTION.

-- THE PRESIDENT IS COMMITTED TO PROMOTING REPRODUCTIVE
HEALTH, BILATERALLY AND MULTILATERALLY. FOR THE U.S. TO
BE ABLE TO FUND UNFPA, THE PROGRAM IN CHINA MUST BE
CONDUCTED IN A COERCION-FREE CLIMATE.

-- WE HAVE HAD MANY DISCUSSIONS WITH UNFPA AND THE CHINESE
GOVERNMENT TO RESOLVE THE PROBLEM, BUT PROGRESS, ALTHOUGH

·PROMISING, ·IS SLOW.                    UNCLASSIFIED

-- WE ARE CONCERNED THAT THE PROBLEM WILL NOT BE RESOLVED
BY THE JANUARY 20 UNDP/UNFPA EXECUTIVE BOARD MEETING.

                        CONFIDENTIAL

PAGE 10          STATE   262313  200448Z
-- UNFPA'S FIFTH COUNTRY PROGRAM FOR CHINA (2003-2005)
WILL BE ON THE AGENDA. THIS PROGRAM IS VIRTUALLY
UNCHANGED FROM THE FOURTH COUNTRY PROGRAM THAT WAS
DETERMINED TO RUN AFOUL OF U.S. STATUTORY REQUIREMENTS.

-- UNLESS FIVE COUNTRIES STEP FORWARD AND NOTIFY THE
EXECUTIVE BOARD SECRETARIAT IN WRITING THAT THEY WISH TO
BRING THE CHINA PROGRAM BEFORE THE JANUARY EXECUTIVE
BOARD, THE FIFTH COUNTRY PROGRAM WILL BE AUTOMATICALLY
APPROVED.

-- IN THAT CASE, THE U.S. COULD NOT FUND UNFPA'S WORLDWIDE
PROGRAM FOR THE THREE-YEAR DURATION OF THE CHINA PROGRAM.

-- WE ASK YOU TO JOIN U.S. IN NOTIFYING THE EXECUTIVE
BOARD SECRETARIAT TO PLACE THE CHINA PROGRAM ON THE AGENDA
FOR THE JANUARY EXECUTIVE BOARD MEETING.

14. (U) FOR SAN SALVADOR, LIMA, TEGUCIGALPA, QUITO AND
DJIBOUTI:

-- YOUR DELEGATIONS ENTERED RESERVATIONS TO THE 1994
PROGRAM OF ACTION (POA) OF THE INTERNATIONAL CONFERENCE ON
POPULATION AND DEVELOPMENT (ICPD).

-- THESE RESERVATIONS MADE IT CLEAR THAT ALTHOUGH YOUR
COUNTRY JOINED CONSENSUS ON THE POA, YOU REJECTED THE

POSSIBILITY THAT TERMS SUCH AS REPRODUCTIVE HEALTH, FAMILY
PLANNING OR REPRODUCTIVE RIGHTS COULD INCLUDE ABORTION TO
CONTROL FERTILITY OR REGULATE THE POPULATION.
                        CONFIDENTIAL

PAGE 11          STATE   262313  200448Z

-- CHINA'S COERCIVE PRACTICES INCLUDE INVOLUNTARY ABORTION
TO CONTROL FERTILITY AND REGULATE THE POPULATION.   UNFPA'S
FIFTH COUNTRY PROGRAM, IF NOT CHANGED, WOULD PROVIDE
SUPPORT TO THE CHINESE GOVERNMENT'S MANAGEMENT OF THAT
POLICY.

-- WE SHOULD NOT ALLOW UNFPA'S GOOD REPUTATION TO BE

                        UNCLASSIFIED

39

· TAINTED BY SUCH INVOLVEMENT.                UNCLASSIFIED

15. (U) FOR MADRID, MANILA, AND LIBREVILLE:

-- WE WOULD VERY MUCH APPRECIATE YOUR ASSISTANCE IN
FORGING CHANGE IN THE WAY UNFPA'S PROGRAM IN CHINA IS USED
TO PROMOTE A FAMILY PLANNING PROGRAM THAT INCLUDES
COERCIVE PRACTICES, INCLUDING INVOLUNTARY ABORTION, TO
REGULATE THE POPULATION.

-- WE BELIEVE THAT UNFPA IS RESPONSIBLE TO ALL MEMBER
STATES FOR CONDUCTING ITS PROGRAMS IN A COERCIVE-FREE
CLIMATE THAT ALLOWS COUPLES TO DECIDE FREELY AND
RESPONSIBLY THE NUMBER AND SPACING OF THEIR CHILDREN.

-- THE INTRINSIC COERCIVE NATURE OF THE FAMILY PLANNING
CLIMATE IN CHINA CANNOT HELP BUT BE DETRIMENTAL TO UNFPA'S
REPUTATION.

16. (U) FOR LONDON:

-- LIKE YOU, WE HAVE ON NUMEROUS OCCASIONS EXPRESSED OUR
HUMAN RIGHTS CONCERNS REGARDING CHINA'S FAMILY PLANNING
                         CONFIDENTIAL

PAGE 12         STATE   262313   200448Z
PROGRAM.

-- AND LIKE YOU, WE BELIEVED THAT UNFPA'S PRESENCE HAS HAD
A POSITIVE, IF SLOW AND INCOMPLETE, EFFECT ON CHINA'S
FAMILY PLANNING POLICIES.

-- IN RETROSPECT AND IN VIEW OF OUR CONCERNS, UNFPA
EXECUTIVE BOARD MEMBERS SHOULD HAVE ASSUMED A MORE ENGAGED
ROLE IN ENSURING THAT RIGOROUS OVERSIGHT WAS IN PLACE.

-- UNFPA HAS A RESPONSIBILITY TO ALL MEMBER STATES. THE
CHINA PROGRAM IN ITS PRESENT FORM HAS PROVEN TO BE AN
OBSTACLE TO ITS ACQUIRING THE LEVEL OF FUNDING NEEDED TO

RESPOND EFFECTIVELY TO THE DIRE REPRODUCTIVE HEALTH NEEDS
IN THE DEVELOPING WORLD, INCLUDING CHINA.

-- WE WOULD VERY MUCH APPRECIATE YOUR COOPERATION IN
TRYING TO RECTIFY THIS BY HAVING A CONSTRUCTIVE DISCUSSION
DURING THE JANUARY UNDP/UNFPA EXECUTIVE BOARD SESSION THAT
WOULD FOCUS ON CREATING A COERCION-FREE CLIMATE IN CHINA
IN WHICH UNFPA COULD IMPLEMENT THE PROGRAM.

-- JOINING US IN NOTIFYING THE UNDP/UNFPA EXECUTIVE BOARD

UNCLASSIFIED

40

SECRETARIAT IN WRITING THAT YOU WISH TO DISCUSS THE CHINA
PROGRAM WOULD GIVE US THAT OPPORTUNITY.

17. (U) THE U.S. MISSION IS REQUESTED TO USE RELEVANT       UNCLASSIFIED
TALKING POINTS WITH ITS COUNTERPARTS IN THE MISSIONS
MENTIONED IN PARAS 10-12.
POWELL

                              CONFIDENTIAL

PAGE 13         STATE    262313   200448Z

                              CONFIDENTIAL

<< END OF DOCUMENT >>

UNCLASSIFIED

41

Freedom of Information Act Request

Expedited Processing and Fee Waiver/Reduction Request

Case Control No. 2008074136

Our File No. 10-190-1

42



**FedEx**       Shipment Receipt
                Address Information

**Ship to:**                        **Ship from:**
Program and Services                 Theodore Cox Esquire
Office of Information                The Law Office of Theodore
                                     Cox
A/ISS/IPS                            401 Broadway, Ste. 701
Department of State, SA-2            Suite 701
Washington, DC                       New York, NY
20522                                10013
US                                   US
202-261-8484                         2129251208

**Shipping Information**
Tracking number: 796813458770
Ship date: 02/28/2011
Estimated shipping charges:

**Package Information**
Service type: FedEx Express Saver
Package type: FedEx Envelope
Number of packages: 1
Total weight: 1LBS
Declared value: 0.00USD
Special Services:
Pickup/Drop-off: Use an already scheduled pickup at my location

**Billing Information**
Bill transportation to: myaccount-684
Your reference:
P.O. no.:
Invoice no.:
Department no.:

Thank you for shipping online with Fedex ShipManager at fedex.com.

**Please Note**

FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details. The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

https://www.fedex.com/shipping/html/en//PrintIFrame.html

2/28/2011   44

## LAW OFFICE OF THEODORE N. COX, ESQ.

*Attorneys-at-law*
*401 Broadway, Suite 701*
*New York, New York 10013*

Telephone: (212) 925-1208
Facsimile:  (212) 925-5188
E-mail:  tedcoxecf@gmail.com

December 1, 2008

Office of Information Program and Services
A/ISS/IPS
Department of State, SA-2
Washington, DC 20522-8001

> **Re:  Freedom of Information Act Request**
> **Expedited Processing and Fee Waiver/Reduction Requested**

Dear Officer:

This request is made pursuant to the Freedom of Information Act ("FOIA"), codified at 5 U.S.C. §552.  The FOIA statute "calls for broad disclosure of Government records." *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988) (internal quotation marks omitted).  The Department of State implements the FOIA statute in Title 22 Code of Federal Regulations (CFR), part 171.

**Identification of Documents**

The requested documents include all records (as defined in 22 C.F.R. §171.11(e)) relied upon by the Department of State to support each and every statement of fact, speculation, allegation, observation, and/or conclusion made in the following reports:

> 1)  Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, *China:  Profile of Asylum Claims and Country Conditions* (Apr. 1998) (hereinafter "*1998 Profile*").

2)    Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State,
      *China: Profile of Asylum Claims and Country Conditions* (Jun. 2004)
      (hereinafter "*2004 Profile*").

3)    Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State,
      *China: Profile of Asylum Claims and Country Conditions* (Oct. 2005)
      (hereinafter "*2005 Profile*").

4)    Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State,
      *China: Profile of Asylum Claims and Country Conditions* (May 2007)
      (hereinafter "*2007 Profile*").

5)    Bureau of Democracy, Human Rights, and Labor, U.S. Dep't of State,
      *China Country Reports on Human Rights Practices – 2006* (Mar. 2007)
      (hereinafter "*2006 Country Reports*").

Please note that the present request concerns the records that the Department of State
used in preparing the above *Profiles* and *Country Reports*; it is NOT a request of the
*Profiles* and *Country Reports* themselves.

**Scope of Request**

The present request focuses on the sections of the *Profiles* and *Country Reports*
relating to China's population control policy (also referred to as family planning policy).
Specifically, the requested records include, but are not limited to, the following:

- A record containing the identity and country-specific credentials of all of the
  authors contributing to the *Profiles* and *Country Reports*;

- Any written or otherwise recorded attestation or affirmation by such
  contributing authors concerning the veracity, accuracy, objectivity, neutrality
  and/or the source of their statements of facts and/or opinions;

46

- All correspondence, notes, or reports regarding communication between United States government personnel and Chinese authorities cited in the China Profile (e.g., p. 30 of the *2007 Profile*: "National Population and Family Planning Commission officials told U.S. Embassy officials in July 2005 that, in accordance with an unpublished 2002 national-level "Regulation on Issues Concerning Births by Students when Overseas. . ." and "As to Fujian Province, in response to an inquiry by the U.S. Consulate General in Guangzhou. . .");

- All reports and field investigations cited by, or used in compiling the China Profile (see, e.g., p. 24 of the *2007 Profile*: "U.S. diplomats in China have heard reports that local officials occasionally employ illegal means. . .");

- Copies of all laws and regulations cited by the China Profile, in the original Chinese language, including the laws and regulations as appeared in Appendix A and Appendix B of the *2007 Profile*, as well as any documentation regarding the identity and qualifications of the translator(s) used by the Department of State;

- All correspondence, reports, and documentation associated with Appendix C of the *2007 Profile*, including the original (untranslated) letter from the Fujian Province Population and Family Planning Commission, and the initial inquiry from the U.S. government;

- A record of the names and credentials of the American diplomats who stated that they were unaware of "any cases in which returnees from the United States were forced to undergo sterilization procedures on their return" as reported in the *2005 Profile*;

- Records or documentation of any and all investigation team sent to China since 2000 for purposes of investigating China's family planning policy, e.g. an investigation team was sent to China in May 2002 under the direction of the former Secretary of State Colin Powell.

**Expedited Processing Request**

Expedited processing is warranted because the requested information is needed urgently. 22 C.F.R. §171.12(b). Requested information directly pertains to published decisions issued by the Board of Immigration Appeals ("BIA"), including but not limited to *Matter of J-W-S-*, 24 I&N Dec. 185 (BIA 2007), in which the BIA denied asylum claims filed by Chinese asylum applicants who have a genuine fear of persecution by the Chinese government. Because of this line of administrative decisions, a large class of

47

asylum seekers is facing imminent danger of being removed to a country in which they fear persecution. Therefore, the present FOIA request should be processed expeditiously. In any event, the FOIA request should be processed within 20 days. 8 C.F.R. §171.12(d).

**Fee Waiver/Reduction Request**

It is further requested that any fees be waived or reduced "because [the requested documents are] likely to contribute significantly to public understanding of the operations or activities of the Government and is not primarily in the commercial interest of the requester." 22 C.F.R. §171.17(a). As stated above, the requested documents will shed light on the accuracy of the statements made in the Department of State's country reports and asylum profiles, which directly affects a large class of asylum seekers facing imminent removal. In the event that said fee waiver/reduction request is not granted, requester is willing to pay any applicable fees. 22 C.F.R. §171.14.

**Format Requested**

Whenever feasible, it is requested that the documents be provided in CD-ROM format. 22 C.F.R. §171.12(f) ("The Department shall provide requested records in any form or format sought by the requester if the record is readily reproducible in that form or format through reasonable efforts.").

Sincerely yours,

Theodore N. Cox

48

Theodore N. Cox, Esq.
Law Office of Theodore N. Cox
401 Broadway, Suite 701
New York, NY 10013
Tel.: (212) 925-1208
Fax : (212) 624-0232
tedcoxecf@gmail.com

Chairman
Appeals Review Panel
C/O Appeals Officer
A/ISS/IPS/PP/LC
U.S. Department of State
SA-2, Room 8100
Washington, D.C. 20522-8100

Dated:  March 18, 2011

RE:   **Freedom of Information Act Appeal**
      **Case Control No. 200807436**

      **Our File No. 10-190-1**

Dear FOIA Officer:

This Freedom of Information Act ("FOIA") Appeal amends a previous appeal, case control no. 200807436, regarding the FOIA response received to a request for documents used in formulating the Bureau of Democracy, Human Rights, and Labor, U.S. Dep't of State, Country Profiles on China ("China Country Profiles").  This appeal serves to narrow and specify the documents requested in the appeal notice dated February 18, 2011.

The initial FOIA request regarded any or all documents used in putting together the China Country Profiles, including, but not limited to, investigations undertaken and records and documents reviewed when analyzing and assessing the implementation of family planning policy in China, the sources, including people and documents, used when gathering such information, the method through which the investigations were

49

undertaken, who in fact undertook such investigations and research, and how documents and records were translated from Chinese to English.

Two responses to this request were received. These documents did not provide information regarding specific findings in the China Country Profiles, which is why believe that there are additional records responsive to our initial request made that were not located and/or were not sent to us.

In order to assist in finding these records, this amended appeal specifically cites to the findings in specific China Country Profiles for which the initial FOIA response did not provide a factual basis for, and that we therefore again request the documentation and records that serve as a basis for these findings:

2005 China Country Profile:

- American diplomats in China are unaware of "any cases in which returnees from the United States were forced to undergo sterilization procedures on their return."

2006 China Country Profile:

- "[s]enior officials stated repeatedly that the Government 'made it a principle to ban coercion at any level' and the SFPC [State Family Planning Commission] has issued circulars nationwide prohibiting birth planning officials from coercing women to undergo abortions or sterilization against their will."

- Physical coercion is specifically condemned.

2007 China Country Profile:

- "In 2003, officials in one province who tried to force a woman to be sterilized were reprimanded after she complained to national family planning officials and insisted on her right under the law to choose her method of birth control. She subsequent chose an IUD."

- "The U.S. Embassy and Consulates General are unaware of any so-called "abortion certificates,".

50

- "According to the Fujian Provincial Birth Planning Committee (FPBPC), there have been no cases of forced abortion or sterilization in Fujian Province in the last 10 years…

-   The FPBPC acknowledges that during the 1980s and early 1990s there were isolated cases of forced abortion and sterilization.  Since that time, the FPBPC asserts that it has insisted that all men and women who undergo surgical procedures provide informed, written consent before surgery.

- Local physicians in contact with the U.S. Consulate General in Guangzhou report that they have not seen signs of forced abortions or sterilizations among their patients from Fujian and Guangdong Provinces since the 1980s."

- "… a hospital director in Changle, Fujian, stated that the hospital would take "measures" (unspecified) to induce some patients to undergo abortions in the name of compliance with the birth planning law. Consulate General officials visiting Fujian have found that coercion through public and other pressure has been used, but they did not find any cases of physical force employed in connection with abortion or sterilization.  In interviews with visa applicants from Fujian, representing a wide cross-section of society.  Consular General officers have found that many violators of the one-child policy paid fines but found no evidence of forced abortion or property confiscation."

- Enforcement efforts in Fujian Province of family planning policies is "uneven."

**Expedited Processing Request**

Expedited processing is warranted because the requested information is needed urgently.  2 C.F.R §171.12(b).  Requested information directly pertains to published decisions by the Board of Immigration Appeals ("BIA"), including but not limited to *Matter of J-W-S-*, 24 I&N Dec. 185 (BIA 2007), in which the BIA denied an asylum claim filed by a Chinese asylum applicant who have a genuine fear of persecution by the Chinese government, on the ground that there was not evidence of coercive enforcement of the family planning policy in China.  The BIA's decision cited repeatedly to Department of State China Country Profiles for the basis of its findings.  Therefore, this evidence goes directly to this claim.  Because of this line of administrative decisions, a large class of asylum seekers are facing imminent danger of being removed to a country

3

51

in which they fear persecution. Therefore, the present FOIA request should be processed expeditiously. In any event, the FOIA request should be processed within 20 days. 8 C.F.R. §171.12(d).

Since the FOIA response received failed to provide the records requested, and there is strong reason to believe that further records and documentation exist, the FOIA request should be remanded.

It is also requested that your office render a decision within 20 business days pursuant to 5 U.S.C. §552(a)(6)(A)(ii). Thank you for your prompt attention to this matter.

Sincerely yours,

Theodore N. Cox

52

AFFIDAVIT

| | | |
|---|---|---|
| STATE OF NEW YORK | } | |
| | } | ss.: |
| COUNTY OF NEW YORK | } | |

Theodore N. Cox, an attorney duly admitted before the bar of the courts of the State of New York and this Court, hereby affirms under penalties of perjury:

1. I submitted the following Freedom of Information Act Request on December 1, 2008 to the Office of Information Program and Services at the US Department of State with a cover letter dated December 1, 2008 (See Attached Exhibit A). I did not save a copy of the cover letter with my signature. I am writing this affidavit to confirm that Exhibit A, dated December 1, 2008 is an exact copy of the cover letter that I submitted to the US Department of State with my Freedom of Information Act Request.

2. I also submitted the following Freedom of Information Act Appeal, Case Control No. 200807436, with a cover letter dated March 18, 2011 (See Attached Exhibit E). I did save a copy of the cover letter with my signature. I am writing this affidavit to confirm that Exhibit E, dated March 18, 2011 is an exact copy of the cover letter I submitted to the US Department of State with my Freedom of Information Act Appeal.

Dated: August 22, 2011
New York, New York

Theodore N. Cox

53